UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Christie L. Sullivan,

      Plaintiff,

v.                                                                               Case No. 08-12245

Regents of the University of Michigan, *et al.*,                  Honorable Sean F. Cox

      Defendants.

_____/

**OPINION
GRANTING IN PART, AND DENYING IN PART,
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Following her arrest by Defendant Officer Frank Rubino, Plaintiff filed this action

asserting a § 1983 excessive force claim, and state-law claims for malicious prosecution and

assault and battery. The matter is currently before the Court on Defendant's Motion for

Summary Judgment. The Court finds that the issues have been adequately presented in the

parties' briefs and that oral argument would not significantly aid the decisional process. *See*

Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. The Court therefore

orders that the motion will be decided upon the briefs. For the reasons set forth below, the Court

shall GRANT THE MOTION IN PART AND DENY THE MOTION IN PART. The Court

shall GRANT the motion to the extent that the Court shall rule that: 1) Plaintiff's claims against

Officer Rubino in his official capacity are barred by Eleventh Amendment immunity; and 2)

Officer Rubino is entitled to summary judgment with respect to Plaintiff's malicious prosecution

claim because the underlying criminal proceeding against her was not terminated in her favor.

The Court shall DENY the motion in all other respects.

1

BACKGROUND

Plaintiff Christine L. Sullivan ("Plaintiff") filed this action on May 22, 2008, against the following Defendants: Regents of the University of Michigan, University of Michigan Department of Public Safety, and Officer Frank Rubino, an officer with the Department of Public Safety at the University of Michigan ("Officer Rubino").  Her complaint asserts the following three counts: "Violation Of Civil Rights Pursuant to 42 U.S.C. 1983 As To All Defendants" (Count I); "Malicious Prosecution" (Count II); and "Assault And Battery" (Count III).

A.    Plaintiff's Complaint:

Plaintiff's complaint alleges that on April 12, 2007, she was driving a motor vehicle in Ann Arbor, Michigan.  (Compl. at ¶ 7).  She admits that the vehicle she was driving had expired license plate tabs.  (Compl. at ¶ 8).  Officer Rubino, "driving a vehicle marked as a University of Michigan Public Safety Department vehicle," pulled Plaintiff over.  Plaintiff admits that once he had made the traffic stop, Officer Rubino learned that Plaintiff's driver's licence was suspended and that there were outstanding traffic warrants for Plaintiff.  (Compl. at ¶ 10).

Plaintiff further alleges that Officer Rubino "informed Plaintiff that he was placing her under arrest.  Initially, based on a number of reasons, including Plaintiff's uncertainty about [Officer] Rubino's authority to arrest her because she was not on University of Michigan property, Plaintiff was reluctant to comply.  However, Plaintiff did comply and placed her hands behind her back as [Officer] Rubino had instructed."  (Compl. at ¶ 11).  Plaintiff alleges that while she was standing with her hands behind her back, Officer Rubino, "while holding both of Plaintiff's hands in his left hand, viciously and without provocation, struck Plaintiff from behind on her neck/head with great force and violence, knocking her to the ground, whereupon [Officer]

2

Rubino proceeded to hit, kick and then to fondle Plaintiff." (Compl. at ¶ 12). Plaintiff alleges

that she was then placed in the patrol vehicle and taken to jail. (Compl. at ¶ 13).

Plaintiff further alleges that Officer Rubino "falsely reported that Plaintiff had injured

him and he caused charges to be instituted against Plaintiff, including a charge that Plaintiff had

resisted arrest and assaulted [Officer] Rubino causing injury requiring medical treatment."

(Compl. at ¶ 14). "At a subsequent trial, Plaintiff was convicted of a lesser charge." (Compl. at

¶ 15).

B.      Evidence Presented By The Parties In Connection With The Pending Motion:

        1.      The Videotape Of The Incident:

Some of the events at issue in this case were recorded by a video camera affixed to

Officer Rubino's police vehicle. Officer Rubino submitted a copy of that videotape as Exhibit

No. 2 in support of his Motion for Summary Judgment. The Court will refer to the videotape

below by the second to the time-stamped information that appears on the tape. The relevant

events depicted on the tape, taken in the light most favorable to Plaintiff, are as follows.

The videotape, which is approximately thirty-seven minutes long, begins at 15:39:19. At

that time, Officer Rubino's police vehicle is stopped at a traffic light on Eisenhower Parkway.

At 15:40:25 his vehicle drives away from the light. His vehicle picks up speed and approaches

the vehicle driven by Plaintiff. Plaintiff's vehicle makes a right hand turn onto another street.

Plaintiff then turns right in to a driveway of a business and stops her car at 15:41:15.

Officer Rubino then exits his vehicle and approaches the driver's side window of

Plaintiff's vehicle at 15:41:35. Officer Rubino identifies himself to Plaintiff and then asks her

for her drivers license, registration and proof of insurance. Plaintiff responds, "I don't have

anything, I'm on my way to Secretary of State . . ." She then tells him that she is driving her mother's car.

Officer Rubino asks Plaintiff for her name and date of birth and she provides that information. When he asks Plaintiff for her address she responds that she does not have one and that she is homeless.

Officer Rubino asks Plaintiff for her mother's name and she states that her mother's name is Barbara Young. He then asks for her mother's address. At first, Plaintiff refuses to provide that information but ultimately gives him an address for her mother.

Officer Rubino then asks Plaintiff for identification. At this time, Plaintiff appears to be talking on her cell phone. Plaintiff ultimately gives Officer Rubino some identification. He then asks her to hand him the keys from the ignition. Officer Rubino asks Plaintiff multiple times for the keys before she complies and hands him the keys.

Once Plaintiff gives him the keys, Officer Rubino gets back in his vehicle at 15:45:23. While he is communicating on his police radio, at 15:46:26, Plaintiff gets out of her vehicle, walks to the back of it, opens the trunk, places her purse inside the trunk, and shuts the trunk.

Officer Rubino gets out of his vehicle and asks Plaintiff what she is doing. He then tells Plaintiff to "come over here for a second," and motions for Plaintiff to move toward the back of her vehicle. The audio then cuts out.

Plaintiff starts to go get back in her vehicle, then stops, places her hands up in the air and walks toward the back of her vehicle at 15:46:52.

When the audio comes back on, Plaintiff is asking Officer Rubino if he can call her mother. He responds by telling her to put her hands behind her back. The two go back and forth

4

with Officer Rubino telling Plaintiff to place her hands behind her back and Plaintiff asking him to call her mother.

Officer Rubino then uses a knee strike on Plaintiff and she asks, "what are you doing? stop." As the two struggle, Plaintiff states "I'm trying to turn around if you'd let me." The audio portion of the videotape is cutting in and out at this point.

Plaintiff then has her hands behind her back, and Officer Rubino is telling Plaintiff "let go of your hands." Plaintiff's hands are blocked from the view of the camera by Officer Rubino's body but he appears to be having some difficulty handcuffing Plaintiff.

At 15:47:42, Plaintiff has her hands behind her back and does not appear to be moving. Officer Rubino then, at 15:47:44, strikes Plaintiff from behind using his right hand. He strikes her in the head or neck area and then the two of them move to the left, outside of the view of the camera, as Officer Rubino appears to pull Plaintiff in that direction by her neck and/or shoulders. Plaintiff shouts, "oh my god." The two go outside of the view of the camera at 15:47:48.

The two appear back in view of the camera for a split second at approximately 15:47:50 but then go back outside of the view of the camera. While they are outside of the view of the camera, Plaintiff is heard shouting that Officer Rubino is hitting her.

Plaintiff comes back into view of the camera at 15:48:06. At that time, Officer Rubino is spraying pepper spray toward Plaintiff and Plaintiff is walking back towards the rear of her vehicle and wiping her face with her shirt.

At 15:48:11, Officer Rubino is seen following behind Plaintiff and he walks outside of the view of the camera, as he is communicating for his back-up to "step it up."

2.      Other Exhibits Submitted By Officer Rubino:

Attached as Exhibit 1 to his motion is Officer' Rubino's police report.  Police reports of Officers Officer Nanette Push and Officer Brenda Yaklin, two officers that arrived at the scene after the events in question were over, are attached as Exhibit 4 to Officer Rubino's motion.

Exhibit 5 to Officer Rubino's Motion is the Judgment of Washtenaw County Circuit Court.  The Judgment states that on November 2, 2007, Plaintiff was found guilty of the following crimes:  1) "Police Officer-Assault/Resist/Obstruct" in violation of M.C.L. § 750.81D1; and 2) "Lic Sus Rev De./Let Sus Per Operate" in violation of M.C.L. § 257.9041B.

Attached as Exhibit No. 3 to Officer Rubino's Motion is a Videotape Transcript of Case No. 07-657-FH, *People v. Christi Sullivan*.  This tape shows, among other things, Plaintiff testifying about her arrest.  At 10:51:49 of Exhibit 3, Plaintiff testifies as follows regarding the point in the arrest videotape at 15:47:45:

Q.      At this point were you saying anything to the officer?
A.      No.
Q.      Were you struggling at all?
A.      No.  He had both my hands in his one hand.
Q.      At this point is he holding both of your hands?
A.      Yes.
Q.      Did you take your nails and stick them into his hands?
A.      No.
Q.      Did you have any idea what he was doing behind you?
A.      No, I did not.

(Def.'s Ex. 3 at 10:51:49).  Plaintiff further testified, at 10:53:16, that after Officer Rubino struck her on the neck, he grabbed her around the neck, dragged her to the ground away from the camera, then got on top of her and continually hit her.

Officer Rubino also submitted, as exhibits to his Reply Brief, pictures of his hands and face to support his testimony that Plaintiff scratched him during the events at issue.

6

    3.    <u>Other Exhibits Submitted By Plaintiff:</u>

Plaintiff submitted four exhibits in support of her Response Brief.  The first one, Exhibit A, is Officer Rubino's police report.

Exhibit B is excerpts from Plaintiff's criminal trial, Volume I.   Plaintiff directs the Court to the testimony given by Ms. Scott, a person who was stopped in traffic near the incident who testified at the criminal trial.  Ms. Scott testified that she saw only "15 to 20 seconds" of the incident and that during those 15 to 20 seconds, she saw Officer Rubino strike Plaintiff in the leg.  She did not see Plaintiff strike Officer Rubino.  (Ex. B at 147-49).

Exhibit C is excerpts from Plaintiff's criminal trial, Volume II.  Plaintiff directs the Court to pages 67 to 68 of Plaintiff's testimony at her criminal trial, wherein she testified as follows with regard to the arrest videotape at 15:47:45:

> Q.    At this point were you saying anything to the officer?
> A.    No.
> Q.    Were you struggling at all?
> A.    No.  He had both my hands in his one hand.
> Q.    At this point is he holding both of your hands?
> A.    Yes.
> Q.    Did you take your nails and stick them into his hands?
> A.    No.
> Q.    Did you have any idea what he was doing behind you?
> A.    No, I did not.

(Pl.'s Ex. C at 67-68).  She further testified that the force of the blow and Officer Rubino grabbing her around the neck propelled her to the ground, where Rubino got on top of her and "kept continually hitting me."  (Pl.'s Ex. C at 68-69).

Exhibit D is the criminal complaint against Plaintiff, which shows that Plaintiff was charged with: 1) "Assaulting/Resisting/Obstructing Causing Injury" in violation of M.C.L. § 750.81d(2); and 2) "Operating - License Suspended, Revoked, Denied" in violation of M.C.L. §

257.904(d).

C.      Procedural History:

Plaintiff's arrest occurred on April 12, 2007.  Subsequent to her arrest, Plaintiff was charged with driving on a suspended license.  (Pl.'s Ex. D).  She was also charged with violating M.C.L. § 750.81d(2), which provides that it is a felony punishable by not more than four years for a person to assault, batter, wound, resist, obstruct, oppose or endanger a person who the individual knows is performing his or her duties, thereby "causing bodily injury requiring medical attention or medical care."

Plaintiff's criminal case was tried before a jury in the state court on November 1, 2007, and November 2, 2007.  Both Plaintiff and Officer Rubino testified at trial.  On November 2, 2007, the jury convicted Plaintiff of driving with a suspended license.  The jury also convicted Plaintiff of the lesser felony offense of violating M.C.L. § 750.81d(1), which does not require the plaintiff to have caused bodily injury requiring medical attention and is a maximum two-year, rather than a four-year, felony.

Plaintiff filed this action on May 22, 2008.  During this action, Plaintiff stipulated to the dismissal without prejudice of all claims asserted against the Regents of the University of Michigan and the University of Michigan Department of Public Safety.  (Docket Entry No. 21). Thus, the only remaining claims in this action are Plaintiff's § 1983, malicious prosecution and assault and battery claims against Officer Rubino.

Discovery closed in this action on March 13, 2009.  (*See* Scheduling Order, Docket Entry No. 8).

Officer Rubino filed this Motion for Summary Judgment on April 13, 2009.  The parties

8

have fully briefed the motion.

After the parties had completed the briefing of the motion, on June 18, 2009, the Michigan Court of Appeals issued an unpublished opinion wherein it: 1) remanded the matter for entry of a directed verdict of acquittal on the charge of driving with a suspended license, because the prosecution failed to present evidence that Plaintiff received notice of her suspension in the manner provided by statute; and 2) affirmed Plaintiff's conviction for violating M.C.L. § 750.81d(1). *People v. Sullivan*, 2009 WL 1710699 (Mich. App. June 18, 2009).

## ANALYSIS

I.  <u>The Claims Against Officer Rubino In His Official Capacity Are Barred By The Eleventh Amendment.</u>

In his motion, Officer Rubino asserts that Plaintiff's claims against him in his official capacity are barred by the Eleventh Amendment. Citing *Quern v. Jordan*, 440 U.S. 332 (1979), he states that the United States Supreme Court has repeatedly held that claims for money damages brought against the state or state officials acting in their official capacities under § 1983 are barred by the Eleventh Amendment. He also states that the Supreme Court and the Sixth Circuit have held that the Eleventh Amendment bars suit in federal court against a state or its officials alleging a violation of state law. (Def.'s Br. at 6) (citing *United States Pipe & Foundry Co. v. Johnson*, 927 F.2d 296 (6th Cir. 1991)). He further states that the Sixth Circuit has specifically held that the University of Michigan is an agency of the State of Michigan that enjoys Eleventh Amendment immunity. *Estate of Ritter v. University of Michigan*, 851 F.2d 846 (6th Cir. 1988).

In response, Plaintiff "concedes that the 11th Amendment affords immunity to Defendant Rubino in his official capacity, for all claims of Constitutional violation." (Pl.'s Br. at 7). Thus,

9

Plaintiff appears to acknowledge that her § 1983 claim, to the extent that it is brought against Officer Rubino in his official capacity, is barred by Eleventh Amendment immunity.  It is not clear whether Plaintiff concedes that her two state-law claims, to the extent that they are brought against Officer Rubino in his official capacity, are barred.

Even if Plaintiff does not agree that the state-law claims against Officer Rubino in his official capacity are barred, the Court concludes that all claims in this action (state and federal) brought against Officer Rubino in his official capacity are barred.  Pursuant to *Estate of Ritter, supra*, and *Dugan v. Brooks*, 818 F.2d 513 (6th Cir. 1987), the Eleventh Amendment bars suit against a University of Michigan police officer in his official capacity.  Moreover, such immunity applies to not only to Plaintiff's § 1983 claim, but also applies to any pendent state law claims against Officer Rubino in his official capacity.  *See e.g., Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir. 2007).

II.    Officer Rubino Is Not Entitled To Dismissal Pursuant To *Heck v. Humphrey.*

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court held that a claim for damages under 42 U.S.C. § 1983 is not cognizable if it would necessarily imply the invalidity of a prior conviction that has not been invalidated.

In his motion, Officer Rubino asserts that Plaintiff's § 1983 excessive force claim is barred by *Heck* because it is a collateral attack on her criminal conviction in state court.  He contends that is so because the "lawfulness of the arrest is an element of the crime of resisting arrest."  (Def.'s Br. at 11).

"However, under Michigan Compiled Laws § 750.81d, the lawfulness of an arrest is no longer an element of the charge of resisting and obstructing."  *Rogers v. Detroit Police Dept*.,

10

595 F.Supp.2d 757, 769 (E.D. Mich. 2009) (citing *People v. Ventura*, 262 Mich.App. 370

(2004)); *see also People v. Sullivan, supra* at * 2-3 (noting that under *Ventura*, lawfulness of the

arrest is not an element of the offense.); *see also Bobo v. City of Pontiac*, 2008 WL 1882705 at

*4 (E.D. Mich. 2008).  In *Bobo*, Judge Robert Cleland explained:

> This circuit (in an unpublished decision) and several other circuits (in published
> decisions) have held that excessive-force claims may proceed in the face of a
> *Heck* challenge despite the existence of an outstanding conviction for resisting
> arrest.  *See Sigley v. Kuhn*, Nos. 98-3977, 99-3531, 2000 WL 145187, at * 4 (6th
> Cir. Jan. 31, 200) ("Sigley's section 1983 action attempts to prove that Kuhn used
> unreasonable and excessive force subsequent to Sigley's arrest and resistence.
> Nothing in that determination invalidates the underlying criminal conviction for
> resisting arrest."); *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th
> Cir. 1999) ("Whether [plaintiff] resisted arrest . . . is a question separate and
> distinct from whether the police officers exercised excessive or unreasonable
> force in effectuating his arrest."); *Nelson v. Jashurek*, 109 F.3d 142, 146 (3d Cir.
> 1997) (holding that excessive-force claim was not *Heck* barred because "it is
> possible for a finding that the defendant was resisting arrest to coexist with a
> finding that the police used excessive force to subdue him").

*Bobo, supra*, at * 5.

The Court concludes that Plaintiff's § 1983 excessive force claim is not barred by *Heck*

because it is possible for a finding that Plaintiff resisted arrest to coexist with a finding that

Office Rubino used excessive force to arrest her.  The elements of Plaintiff's criminal conviction

for resisting and obstructing do not include, for example, the degree of force that Officer Rubino

used while effectuating Plaintiff's arrest.  *Bobo,* supra at * 5.  The issue of whether Plaintiff

resisted arrest is separate and distinct from the issue of whether Officer Rubino exercised

excessive force in arresting her.  This is especially so here, where the challenged force occurred

after Plaintiff claims to have been subdued and compliant.

III.    Officer Rubino Is Not Entitled To Qualified Immunity With Respect To Plaintiff's §
        1983 Claim.

11

Next, Officer Rubino asserts that he is entitled to qualified immunity from Plaintiff's excessive force claim, brought under § 1983.

To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law. *Dominguez v. Correctional Medical Services,* 555 F.3d 543, 549 (6th Cir. 2009).

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.; Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation. *Dominguez*, 555 F.3d at 549.

"[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994). In this action, Officer Rubino did not raise qualified immunity in a motion to dismiss prior to discovery. Rather, he raised the issue in the instant Motion for Summary Judgment, filed after the close of discovery.

"As a threshold matter, the plaintiff must allege in the complaint facts stating a claim of excessive force." *Grawey v. Drury*, __ F.3d __, 2009 WL 1479017 (6th Cir. May 28, 2009). "If

12

the complaint sufficiently sets forth allegations making out a claim of excessive force, then the plaintiff has the burden of producing facts during the discovery process supporting these allegations.  This will generally be accomplished through plaintiff's own testimony, the testimony of defendants, and witness testimony."  *Id*.  In other words, "a government official will be entitled to qualified immunity after discovery if the plaintiff is unable to support h[er] allegations with evidence.  This has been clear since *Mitchell:* 'Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.'" *Turner v. Scott,* 119 F.3d 425, 428 n.2 (6th Cir. 1997).

Here, Plaintiff's complaint alleges that Officer Rubino "informed Plaintiff that he was placing her under arrest.  Initially . . . Plaintiff was reluctant to comply.  However, Plaintiff did comply and placed her hands behind her back as [Officer] Rubino had instructed."  (Compl. at ¶ 11).  Plaintiff alleges that while she was standing with hands behind her back, Officer Rubino, "while holding both of Plaintiff's hands in his left hand, viciously and without provocation, struck Plaintiff from behind on her neck/head with great force and violence, knocking her to the ground, whereupon [Officer] Rubino proceeded to hit, kick and then to fondle Plaintiff." (Compl. at ¶ 12).  Thus, Plaintiff has *alleged* facts stating a claim of excessive force.  Accordingly, in responding to Officer Rubino's motion, Plaintiff has the burden of producing evidence supporting these allegations.

Both parties agreed that a claim of excessive force in the course of making an arrest is properly analyzed under the Fourth Amendment's "objective reasonableness" standard.  *Marvin*

13

*v. City of Taylor*, 509 F.3d 234 (6th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).

"In step one of the qualified immunity analysis, the court determines whether th[e] evidence produced by plaintiff, taken in the light most favorable to plaintiff but viewed from the perspective of a reasonable officer on the scene, establishes a claim of excessive force in violation of the Constitution." *Grawey, supra.* In determining whether an excessive force constitutional violation occurred, the court "must look at the objective reasonableness of the defendant's conduct, 'which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Id.* (quoting *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007)). "Among the most important factors to consider in determining the objective reasonableness of the force used are: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Grawey, supra.*

Defendant's motion only addresses the first prong of the qualified immunity analysis. In his motion, Officer Rubino asserts that Plaintiff's version of the facts is "blatantly contradicted" by the facts shown by the videotape and therefore the Court "should not adopt the Plaintiff's version of the facts." (Def.'s Br.). Officer Rubino asserts that the totality of the circumstances shows that his conduct was reasonable.

He first notes that -- *prior* to the challenged use of force -- Plaintiff had failed to obey his commands regarding handing over his keys and answering his questions. He further asserts that Plaintiff "engaged in suspicious and dangerous behavior" such as exiting her car and placing an

14

object in her trunk.  (Def.'s Br. at 14).  Officer Rubino further states:

> Officer Rubino asked the Plaintiff four times to put her hands behind her back so he could arrest her.  He then warned the Plaintiff that it would be her last warning before administering the knee strikes.
>
> After Officer Rubino used the knee strikes, Plaintiff responded by struggling with Officer Rubino's continued attempts to handcuff her pulling her arms away and pushing the Officer.  In addition, Plaintiff locked her hands in a way that made handcuffing impossible.  Officer Rubino then asked her twice to unlock her hands and Plaintiff still refused to comply.  While Officer Rubino continued to struggle to place the handcuffs on the Plaintiff, she scratched his hands.  At that point, given Plaintiff's continued struggle to resist the Officer's attempt to place her in handcuffs and her aggression in pushing the Officer and scratching his hands, the Officer appropriately utilized a brachial stun in an attempt to stun the Plaintiff for a sufficient time in order to place her in handcuffs.  The video record demonstrates that Officer Rubino did not use excessive force up to this point, and that he actually acted well below the permitted threshold of force.
>
> The Plaintiff conveniently alleges that Officer Rubino hit her while they were both off camera.  Plaintiff's allegations are not supported by the videotape, the injuries to Officer Rubino, the independent witness, or Plaintiff's own words during the incident.  Plaintiff alleges, in paragraph 12 of her Complaint, that when Officer Rubino used the brachial stun, he knocked Plaintiff to the ground where he proceeded to hit, kick, and fondle Plaintiff.  Officer Rubino testified that immediately after he employed the brachial stun, the Plaintiff punched him in the eye.  A review of the videotape indicates that Plaintiff and Officer Rubino were off camera for a period of 18-20 seconds – hardly enough time for the two to fall to the ground and for Officer Rubino to hit, kick, and fondle Plaintiff.  In addition, when the Plaintiff and the Officer briefly are seen on the tape, they are still both standing after the brachial stun was employed.

(Def.'s Br.).

This Court rejects Officer Rubino's position that Plaintiff's version of the events is

entirely contradicted by the videotape.  While it may or may not have occurred, the videotape

does not show Plaintiff scratching Officer Rubino's hands while he's attempting to handcuff her.

Moreover, she appears to be standing still when he strikes her.  Plaintiff's allegation that she was

knocked to the ground does not appear contradicted either.  While they moved a bit before going

to the ground, it does appear that they went to the ground after the strike, although it was off camera.

As to Officer Rubino's contention that there was not enough time during the 20 seconds or so that they were off camera for Officer Rubino to strike Plaintiff, the Court finds that position without merit. Incidents can unfold very rapidly. The fact that Officer Rubino and Plaintiff were out of view for only a short period of time does not contradict Plaintiff's position that Officer Rubino used unnecessary force during that short period of time.

Moreover, although Officer Rubino and a witness at the scene may testify that he did not use unnecessary force while they were on the ground, such testimony is not dispositive. Because Plaintiff offers admissible evidence (i.e., her own testimony) that Officer Rubino hit, kicked and fondled her on the ground, the conflicting testimony simply creates an issue of fact for the jury.

Plaintiff disputes that her version of the facts is contradicted by the videotape. She contends the tape supports her position and she "encourages this Court to review the videotape, particularly at point 15:47:40-47." She further states:

> Since the Court is required to analyze the facts in segments, Plaintiff submits that while Plaintiff arguably was slow to respond to the commands of the officer and while she may have demonstrated a lack of respect (which should not surprise an officer who is supposedly trained to deal with a university-aged population), she generally is merely asking to call her mother, she never uses profanity and she never is combative prior to being struck. Most importantly, after viewing this segment of the video which shows Plaintiff being violently struck by Rubino, a reasonable jury could certainly find that at the time, she is subdued, compliant and certainly not posing a threat to the officer.

(Pl.'s Resp. at 17). Plaintiff further asserts that several cases establish that the use of force after a suspect has been incapacitated or neutralized is excessive, including *Baker v. City of Hamilton, Ohio*, 471 F.3d 601 (6th Cir. 2006).

16

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has submitted sufficient evidence to establish a genuine issue of material fact as to whether Officer Rubino used excessive force. Plaintiff's crimes, driving with a suspended driver's license and license plates, are relatively minor and do not involve violence. Plaintiff was an unarmed woman and she never attempted to flee the scene. Although Plaintiff was uncooperative and disrespectful after being pulled over by Officer Rubino, and at first resisted arrest, at the time the alleged excessive force occurred, the tape does not show Plaintiff resisting. Rather, she appears to be standing still with her arms behind her back, with her back to Officer Rubino:

> At 15:47:42, Plaintiff has her hands behind her back and does not appear to be moving. Officer Rubino then, at 15:47:44, strikes Plaintiff from behind using his right hand. He strikes her in the head or neck area and then the two of them move to the left, outside the view of the camera, as Officer Rubino appears to pull Plaintiff in that direction by her neck or shoulders. Plaintiff shouts, "oh my god." The two go outside of the view of the camera at 15:47:48.

Moreover, Plaintiff testified that she was not resisting at the time that Officer Rubino struck her from behind:

> Q.  At this point were you saying anything to the officer?
> A.  No.
> Q.  Were you struggling at all?
> A.  No. He had both my hands in his one hand.
> Q.  At this point is he holding both of your hands?
> A.  Yes.
> Q.  Did you take your nails and stick them into his hands?
> A.  No.
> Q.  Did you have any idea what he was doing behind you?
> A.  No, I did not.

(Pl.'s Ex. C at 67-68). Thus, construing the evidence in the light most favorable to Plaintiff, she was not resisting arrest or trying to flee at the time that Officer Rubino struck Plaintiff in the

17

head/neck area.  Rather, if her testimony is believed, she was subdued and compliant before Officer Rubino struck her.  In addition, Plaintiff has testified that after Officer Rubino struck her on the neck, he grabbed her around the neck, dragged her to the ground away from the camera, and then got on top of her and continually hit her.  That testimony is not contradicted by the video tape because those alleged events occurred off-camera.

The Court further concludes that *Baker* establishes that, at the time of this incident, a reasonable officer would have been aware that it was unlawful to use force on a neutralized suspect.  *See also Grawey, supra* ("The general consensus among our cases is that officers cannot use force, including pepper spray, on a detainee who has been subdued . . . or is not resisting arrest.").

Accordingly, the Court shall deny Officer Rubino's request for qualified immunity.

IV.    <u>Officer Rubino Is Not Entitled To Summary Judgment Based On Governmental Immunity.</u>

Next, Officer Rubino claims that he is entitled to governmental immunity with respect to Plaintiff's tort claims under M.C.L. § 691.1407(2).  Citing *Bradley v. City of Ferndale,* 148 Fed.Appx. 499 (6th Cir. 2005), and the statute, Officer Rubino states that the "employee provision of this Act gives employees immunity when acting on behalf of a government agency when the situation meets three requirements: '(a) The . . . employee is acting or reasonably believes he or she is acting within the scope of his or her authority. (b) The governmental agency is engaged in the exercise or discharge of a governmental function. (c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.'" (Def.'s Br. at 16).  He then asserts that all three requirements are met here.

In response, Plaintiff acknowledges that "[p]olice officers are shielded from liability for

18

conduct that would normally constitute a tort, if the conduct was objectively reasonable under the circumstances."  (Pl.'s Resp. Br. at 18).  *Citing Meyer v. Woodward*, __ F.Supp.2d __, 2008 WL 4539517 (E.D. Mich. 2008), Plaintiff contends, however, that where, as here, there is a genuine issue of fact as to whether the defendant's conduct was objectively reasonable, the defendant is not entitled to governmental immunity.  Plaintiff further asserts that Officer Rubino is not entitled to governmental immunity for intentional torts such as assault.

"It is true that governmental immunity typically does not extend to intentional torts.  *See Sudal v. City of Hamtramck*, 221 Mich.App. 455, 458, 562 N.W.2d 478 (1997).  However, the law allows police officers to use some force in the exercise of their duties without liability for assault and battery."  *Meyer, supra*, at * 12.  "Police officers are shielded from liability for conduct that would normally constitute a tort, if the conduct was objectively reasonable under the circumstances. *VanVorus v. Burmeister*, 262 Mich.App. 467, 687 N.W.2d 132 (Mich.Ct.App. 2004); *See also Brewer v. Perrin*, 132 Mich.App. 520, 349 N.W.2d 198 (Mich.Ct.App. 1984).*" Meyer, supra*.  For the reasons set forth above, the Court concludes that, construing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Officer Rubino used excessive force.  As such, the Court shall deny his request for governmental immunity.

V.      Plaintiff's Malicious Prosecution Claim Fails Because The Criminal Proceeding Was Not Terminated In Her Favor.

Under Michigan law, an essential element of a claim for malicious prosecution is "the termination of the criminal proceedings in favor of the accused."  *Cox v. Williams*, 233 Mich.App. 388, 391 (1999).   In his motion, Officer Rubino asserts that Plaintiff's malicious prosecution claim must be dismissed because she cannot establish this essential element:

The only criminal proceeding that resulted from this incident led to the Plaintiff's

conviction for resisting arrest. The fact that Plaintiff was convicted of a lesser included charge does not indicate that the criminal charges were terminated in Plaintiff's favor.

(Def.'s Br. at 18).

In response, Plaintiff provides no authority for her position that she can proceed with a malicious prosecution claim after being convicted of a lesser charge.

The Court shall grant summary judgment in favor of Officer Rubino on Plaintiff's malicious prosecution claim. Courts have generally held that a proceeding is terminated in favor of an accused when its final disposition suggests that the accused is *innocent. Cox*, 233 Mich.App. at 392-93. Thus, under Michigan law, criminal proceedings are terminated in favor of the accused by: 1) a discharge by a magistrate at a preliminary hearing; 2) the refusal of a grand jury to indict; 3) the formal abandonment of the proceedings by the public prosecutor; 4) the quashing of an indictment or information; 5) an acquittal; or 6) a final order in favor of the accused by a trial or appellate court. *Id.*

Here, it is clear that none of the first five events occurred with respect to Plaintiff's conviction for violating M.C.L. § 750.81d(1). Thus, Plaintiff can state a claim for malicious prosecution only if she can show that a final order was issued in her favor by a trial or appellate court.

It is undisputed, however, that the underlying criminal trial resulted in a felony criminal conviction. On June 18, 2009, the Michigan Court of Appeals affirmed Plaintiff's felony criminal conviction for violating M.C.L. § 750.81d(1). Plaintiff has offered no authority to support her suggestion that she can proceed with a malicious prosecution claim despite the fact that she was convicted of the lesser included charge. Although this Court has not located any

20

Michigan cases addressing this precise issue, the Court does not believe that a felony conviction of a lesser included charge constitutes a final order "in favor of the accused."  Moreover, other courts that have considered the issue have held that the conviction of a lesser included offense does not satisfy the requirement of a favorable termination.  52 AM. JUR. 2d *Malicious Prosecution* § 40; *see also e.g., St. Germain v. Isenhower*, 98 F.Supp.2d 1366, 1371 (S.D. Fla. 2000) ("Those courts that have addressed the issue presented here have held that a malicious prosecution action will not lie if the plaintiff has been convicted of a lesser-included offense" because "a conviction on a lesser-included offense does not constitute a favorable termination for the accused.").

Accordingly, the Court shall dismiss Plaintiff's malicious prosecution claim.

VI.     Officer Rubino Is Not Entitled To Summary Judgment With Respect To Plaintiff's Assault And Battery Claim.

Officer Rubino asserts that Plaintiff's assault claim should be dismissed because no reasonable jury could find that his use of force was unreasonable in these circumstances.  He contends that just as the first prong of the quality immunity test protects him "because his actions were objectively reasonable, Officer Rubino is protected from an assault claim because his actions were objectively reasonable."  (Def.'s Br. at 19).

As set forth above, however, the Court rules that Officer Rubino is not entitled to qualified immunity and that a reasonable jury could find that he used excessive force.  Thus, the Court shall also deny this ground for relief.

## CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  The Court GRANTS the motion

to the extent that the Court rules that:  1) all claims against Officer Rubino in his official capacity

are barred by Eleventh Amendment immunity; and 2) Officer Rubino is entitled to summary

judgment with respect to Plaintiff's malicious prosecution claim.  The Court DENIES the motion

in all other respects.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 8, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on
September 8, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager